IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| CASTER CONNECTION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.   20 C 1598 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| COLSON GROUP HOLDINGS, LLC d/b/a | ) | |
| Colson Group USA, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Caster Connection, Inc. has brought a four count complaint against defendant Colson Group Holdings, LLC, for temporary, preliminary and permanent injunctive relief, alleging trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. 1125(a) and Illinois common law, and violations of the Illinois Deceptive Trade Practices Act.   The court denied a temporary restraining order after defendant agreed to not to market the alleged infringing product during the pendency of plaintiff's motion for a preliminary injunction.   That motion has been fully briefed, as has defendant's motion to strike "plaintiff's improper reply evidence."   For the reasons explained below, defendant's motion to strike is granted and plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND

Plaintiff makes casters, wheels and other high quality material handling products.   Casters are rollers that attach to the bottom of equipment to make it easier to move heavy loads.   Casters are offered in a variety of materials, sizes and hardness.

Defendant also sells casters and wheels. It claims to be the number one brand for casters and wheels in the world, with more than 1600 employees in 25 facilities, shipping over 190,000 casters every day. Defendant sells its casters and wheels to companies worldwide. It is a business-to-business company. Its customers are distributors, such as plaintiff, original equipment manufacturers ("OEMs"), such as Boeing, and end users such as the U.S. Postal Service. Casters are highly customizable as to size, hardness, load capacity, tread material, and color. According to defendant, orders for casters and wheels are defined by customer specifications. Defendant's sales force meets with potential customers face-to-face, to consult with them on their needs, specifications and requirements.

In 2004 plaintiff designed a low-cost, high-quality caster wheel that could accommodate high load capacities, reject debris and maintain grip during rapid movement. To distinguish this wheel from others in the market, it used an orange color. This wheel, the CC APEX, became plaintiff's flagship product. It is a polyurethane tread/aluminum core ("PT/AC") wheel. Plaintiff claims that its use of the color orange has acquired trademark status and that orange "has been, and is now, an indicator of caster wheel quality and dependability."

In 2010, plaintiff applied to register orange as a trademark for wheels, claiming to be the exclusive source of such wheels. That was not correct; there were a number of companies producing orange casters and/or wheels. Indeed, plaintiff was purchasing such products from defendant at the time it was attempting to register. The Patent and Trademark Office rejected plaintiff's application, instead referring it to the Supplemental Register for failing to meet the substantial burden of establishing that orange had acquired a secondary meaning or acquired distinctiveness as applied to plaintiff's wheels. Even though it claimed to be unaware of any

2

competitors using orange, plaintiff accepted placement of the mark on the Supplemental Register and has never since sought registration on the Principal Register based on five years of "substantially exclusive and continuous use."

Plaintiff's CC APEX is not the first PT/AC wheel. According to defendant's evidence, which is not challenged by plaintiff, that type of wheel was first developed and originally manufactured by JARVIS, a wholly owned subsidiary of defendant. JARVIS started selling its PT/AC wheel, the "Magnum," in 2002 in a variety of colors (but not orange) to distributors across the country, including plaintiff. In 2008, JARVIS began to sell the Magnum in orange. The wheel is still sold today by defendant's ALBION brand. According to defendant, plaintiff purchased the orange Magnum from defendant for years, before eventually deciding to source that same wheel directly from a contract manufacturer in China. And, defendant is not the only source of orange PT/AC wheels besides plaintiff. Plaintiff admits that there are other companies selling orange casters, but not casters in direct competition with the CC APEX. The reason multiple manufacturers offer orange PT/AC wheels is because more than 60% of caster and wheel sales are made in the repair and replacement market. Customers that bought orange wheels demand replacements that match the original color.

In 2019, defendant began developing an improved version of its PT/AC AX wheel that offers "premier efficiency, ergonomics and longevity." It announced its new wheel under the name "CG Max" to communicate to customers that it offers maximum performance. To differentiate the CG MAX from prior wheels and to compete in the replacement market, it manufactured the wheel in what it terms "industry-standard orange and maroon." Plaintiff claims

3

that the CG MAX is a "knock-off product designed to trade off the goodwill of the CC APEX and steal market share from plaintiff.

## DISCUSSION

### DEFENDANT'S MOTION TO STRIKE

"[I]t is beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply." Horvath v. Apria Healthcare, LLC, 2019 WL 5725378, at *2 (N.D. Ill. Nov. 5, 2019) (quoting Murphy v. Village of Hoffman Estates, 1999 WL 160305, at *2 (N.D. Ill. March 17, 1999)). That is precisely what plaintiff has done, according to defendant, arguing that plaintiff has presented all of its evidence in support of its motion in a supplemental declaration of its president, Joseph Lyden, filed with its reply brief. Plaintiff's original motion was supported by an initial declaration from Lyden that attempted to show in very generalized statements that plaintiff had acquired a mark in the color orange. The motion was also supported by what defendant describes as fill-in-the blank declarations from plaintiff's current customers, each of which contained identical language: "I recognize the color Orange used on the surface of a wheel tread of a caster as representing a caster product coming from [plaintiff] exclusively and referring only to [plaintiff's] caster products."

Defendant's response to plaintiff's motion pointed out "numerous deficiencies" in evidentiary support for its motion. In particular, defendant pointed out a lack of evidentiary support for: 1) plaintiff's claim of a protectable right in orange for wheels because it presented "no evidence to show the amount and manner of advertising for orange, or the amount of sales and

numbers of customers for its orange wheel; 2) a likelihood of confusion between the CC Apex and the CG Max because plaintiff failed to submit evidence of actual confusion or a survey suggesting a likelihood of confusion; and 3) irreparable injury in the event defendant continues to use orange caster wheels.   Defendant also argued that plaintiff should not be allowed to remedy the deficiencies by offering new evidence in its reply brief, citing Tellabs Operations, Inc. v. Fujitsu, Ltd., 283 F.R.D. 374, 379 (N.D. Ill. 2012.

There is no doubt that new arguments and facts are not to be presented for the first time in reply.   Id.   Plaintiff argues that its reply has no new legal argument, and just responds to defendant's argument with additional factual support, which it claims is perfectly proper.   See Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc., 251 F.R.D 312, 313 n.2 (N.D. Ill. 2008).   If the addition of new evidence was the only problem with the declaration the court might agree with plaintiff.   But the declaration is inadmissible for other more basic reasons.   Most of Mr. Lyden's statements are not based on his personal knowledge, others are comprised entirely of hearsay, still others present what he "believes," and the whole declaration reads more like an argumentative brief written by an attorney.   In short, in addition to presenting evidence that should have been presented initially so that defendant could respond, the declaration contains none of the indicia of reliability that would allow admission of the stated "facts."   Consequently the court grants defendant's motion to strike the declaration.

## PLAINTIFF'S MOTION FOR PRELININARY INJUNCTION

A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, "by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong,

520 U.S. 968, 972 (1997). The party seeking such relief must show that: 1) it has some likelihood of success on the merits; 2) it has no adequate remedy at law; and, 3) that without relief it will suffer irreparable harm. Planned Parenthood of Ind. and Ky, Inc. v. Comm'r of Ind. State Dep't of Health, 896 F.3d 809, 816 (7th Cir. 2018). If the movant meets these requirements, the court must then weigh the harm the movant will suffer without an injunction against the harm the non-movant will suffer if an injunction is issued. The court makes this assessment using a sliding scale. The more likely the movant is to win, the less heavily need the balance of harm weigh in its favor. The less likely the movant is to win, the more the balance must weigh in its favor. Finally, the court must also determine whether the injunction is in the public interest, taking into account any effects on non-parties. Courthouse News Serv. v. Brown, 908 F.3d 1063, 1068 (7th Cir. 2018).

### Likelihood of Success

Plaintiff need show only that its chances of success are better than negligible. Ill. Council on Long Term Care v. Bradley, 957 F.2d 305, 310 (7th Cir. 1992).   Plaintiff's complaint pleads separate counts for trademark infringement under the Lanham Act and common law, as well as unfair competition and violation of the Illinois Deceptive Trade Practices Act.   The parties agree that the standards for proving liability are the same under all these claims.   To prevail, plaintiff must show that: 1) it has a valid and protectable trademark in the color orange; and 2) defendant's use of the orange color on its CG MAX is likely to cause confusion among consumers.   SpotFuel, Inc. v. PepsiCo, Inc., 932 F.3d 589, 595 (7th Cir. 2019).

### Whether Plaintiff has a Valid and Enforceable Trademark

A trademark is a word, symbol, or device that serves as an indicator of source or origin. 15 U.S.C. § 1127; Sorenson v. WD-40 Co., 792 F3d 712, 722-23 (7th Cir. 2015).   Defendant

argues that plaintiff has no trademark rights because "orange is not an indicator of source." This is because "[c]olor, whether a single overall color or multiple colors applied in a specific and arbitrary fashion, is usually perceived as an ornamental feature of the goods or services." TMEP § 1202.05. Nonetheless, the Supreme Court has stated that "color alone, at least sometimes, can meet the basic legal requirements for use as a trademark. It can act as a symbol that distinguishes a firm's goods and identifies their source, without serving any other function," but only upon a showing of secondary meaning, because color can never be inherently distinctive. Qualitex Co. v. Jacobson Products, Co. Inc., 514 U.S. 159, 162-166 (1995). "[O]ver time, customers of a product may come to treat a particular color on a product or its packaging as signifying a brand" and, therefore, indicate its source. Id. at 163. Secondary meaning can be established "through direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." Thomas & Betts Corp. v. Panduit Corp., 138 F3d277, 291 (7th Cir. 1998).

To determine whether plaintiff has acquired a secondary meaning in a mark, the court must first determine what mark plaintiff actually claims. In its complaint it appears to claim that it has acquired a secondary meaning as to the color orange for all casters. "Indeed consumers know that orange caster wheels stand for [plaintiff's] casters." But it admits that numerous companies were selling orange caster wheels before it attempted to register its mark, and that companies including defendant continue to do so today. Faced with this fact, plaintiff appears to pull back and argue that it has a valid mark in the color orange for its CC APEX caster only. It cannot prevail under either theory.

First, absent Lyden's supplemental declaration, plaintiff has offered little to no evidence to support its claim. Lyden's first declaration states in general terms that plaintiff has engaged in extensive advertising to establish itself as the orange caster company, even designing its website around the color. There is, however, no evidence of volume of sales or plaintiff's place in the market. It has shown that it has been using the color orange for many years, particularly for the CC APEX caster, but it also sells casters in different colors. Indeed, its website appears to indicate that its use of orange is limited to two casters, the CC APEX and the STOUT. The website shows other casters available in blue and grey. And, it does not, and cannot claim that its use of orange is exclusive. Tellingly, its evidence on the most important factors is very limited. "Customer testimony and consumer surveys are the only direct evidence on this question [secondary meaning] . . . the other factors are relevant in a more circumstantial fashion." Intern'l Kennel Club of Chicago v, Inc. v. Mighty Star, Inc. 846 f.2d 1079, 1085 (7th Cir. 1988). As noted, plaintiff has provided declarations from three customers, each indicating in identical language that they recognize the color orange used on the surface tread of a caster as a product coming from plaintiff exclusively. But, it offers no survey evidence despite having years to conduct a secondary meaning survey that would show that customers in the market associate orange with plaintiff. A lack of a consumer survey is not per se fatal to a request for a preliminary injunction, but in its absence, the other factors must strongly support a claim for secondary meaning. Id. at 1086. They simply do not, particularly in light of plaintiff's admission that orange caster are common in the market.

Recognizing its lack of evidence, plaintiff tries to "keep it simple." It argues that defendant intends to sell "knockoffs of [plainitff's] extremely successful CC APEX." This

argument would carry more weight if plaintiff had evidence that consumers identify orange casters as the CC APEX, but it does not. Its customer testimony, limited as it is, is directed to orange casters in general, not the CC APEX. And, defendant has been selling orange PT/AC wheels for years, just not one in direct competition with the CC APEX. As a result, the court concludes that plaintiff has failed to show a likelihood of success of establishing that a valid and enforceable trademark in the color orange.

## **Whether Defendants use of Orange Creates a Likelihood of Confusion**

Even if plaintiff had demonstrated a likelihood of success in establishing a protectable mark, it has failed to demonstrate that defendant's use of the color orange for its CG MAX caster is likely to cause confusion among consumers. The Seventh Circuit has identified seven factors that comprise the likelihood of confusion analysis : "1) similarity between the mark in appearance and suggestion; 2) similarity of the products; 3) area and manner of concurrent use; 4) degree of care likely to be exercised by consumers; 5) strength of the plaintiff's mark; 6) actual confusion; and 7) intent of the defendant to 'palm off' [its] product as that of another." Packman v. Chicago Tribune Co., 267 F. 3d 628, 643 (7th Cir. 2001). No one factor is determinative, and courts may assign differing weights to each of the factors depending on the particular facts presented. In many cases, however, the similarity of the marks, the defendant's intent, and actual confusion have been found to be particularly important. Id. (citing Ty Inc. v. Jones Group, Inc., 237 F. 3d 891, 898 (7th Cir. 2001).

In the instant case, few of the facts favor plaintiff's position. First, even if plaintiff were to have a protectable mark, its strength is weak. Too many companies are selling orange caster/wheels. The two products in question, plaintiff's CC APEX and defendant's CG MAX are

9

very similar looking, but "[t]he test is not simply a side-by-side one, made by the court through a personal comparison, but rather is one of consumer confusion, in light of the manner in which consumers purchased these products." Schwinn Bicycle Co. v. Ross Bicycles, Inc., 870 F. 2d 1176, 1187 n.19 (7th Cir. 1989). Viewed in this manner the products are not quite as similar as they may appear to the untrained eye. The products are sold on branded websites, through branded catalogs, and at trade shows in heavily branded, company-specific booths where sales teams meet face-to-face with potential customers. And, each of the products prominently displays each company's logo and name. There is little likelihood that consumers of these specific products will be confused.

Moreover, there is no evidence to support plaintiff's insistence that defendant is trying to palm its product off as plaintiff's. Plaintiff argues that defendant's election to sell the CG MAX in orange is evidence that it copied from plaintiff. It cites to Weber-Stephen Prods. LLC v. Sears Holding Corp., 2015 WL 5161347, at *5 (N.D. Ill. Sept. 1 2015), for this proposition, but in that case the plaintiff had presented defendant's internal e-mails specifically showing an intent to copy the plaintiff's trade dress to try to fool customers. Plaintiff has no such evidence in the instant case. Finally, although defendant has not yet launched its product, plaintiff has presented no evidence that the sales of other orange casters has caused actual confusion in the market. Consequently, the court concludes that plaintiff has failed to show a likelihood of confusion and, as a result, has failed to demonstrate even a negligible likelihood of success in the merits.

**Balancing of Harms**

Because plaintiff has not shown a greater than negligible chance of success on the merits, it is not entitled to preliminary relief. But, even if it had a slight chance of success, under the sliding

10

scale approach, the less likely its chance of success the more the balance of harms must weigh in its favor. <u>Valencia v. City of Springfield, Ill.</u>, 883 F.3d 959, 966 (7th Cir. 2018).   Because its likelihood of success is so remote, plaintiffs must show that the scales weigh heavily in its favor. They do not.

First, depriving defendant of the ability to sell casters with orange wheels would deprive it of the ability to compete in a specialized market.   Defendant has already expended substantial resources in marketing its CG MAX wheels, and changes in production would cause significant harm.   Its customers continue to purchase replacement wheels in orange, and if defendant is prevented from selling orange CG MAX wheels, sales will be lost to other suppliers.   It has presented some evidence of this already.

Plaintiff argues that without an injunction it will lose its status as the company known for its "Orange Wheels."   But, as shown above, it has presented no evidence that it is so known.   In short, its argument is that defendant will not be harmed by being enjoined from selling infringing wheels.   But its chance of success on infringement is so slight that this fails to tip the scales heavily in its favor.   Consequently, the court concludes that the balance of harms does not justify the entry of a preliminary injunction.

## CONCLUSION

For the reason stated above, defendant's motion to strike [Doc. 36] is granted and plaintiff's motion for a preliminary injunction [Doc. 19] is denied.   The court directs the parties to

11

file a written status report on the court's form by June 17, 2020.   The court will set a date for a status hearing thereafter based on the current COVID emergency.


**ENTER: May 27, 2020**


**Robert W. Gettleman**
**United States District Judge**